IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JENNIFER ANN KERR, | ) | CASE NO. 1:14-CV-00657 |
| | ) | |
| Plaintiff, | ) | JUDGE GWIN |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | VECCHIARELLI |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner | ) | |
| of Social Security, | ) | |
| | ) | **REPORT AND** |
| Defendant. | ) | **RECOMMENDATION** |

Plaintiff, Jennifer Ann Kerr ("Plaintiff"), challenges the final decision of Defendant, Carolyn W. Colvin, Acting Commissioner of Social Security ("Commissioner"), denying her application for Period of Disability ("POD") and Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("Act"), 42 U.S.C. §§ 416(i), 423. This case is before the undersigned United States Magistrate Judge pursuant to an automatic referral under Local Rule 72.2(b) for a Report and Recommendation. For the reasons set forth below, the Magistrate Judge recommends that the Commissioner's final decision be AFFIRMED.

## I.  PROCEDURAL HISTORY

On December 2, 2010, Plaintiff filed applications for POD, DIB, and SSI, alleging a disability onset date of October 31, 2008. (Transcript ("Tr.") 29.) Plaintiff's claims were denied initially on May 11, 2011. (*Id.*) Plaintiff appealed her Title II claim for POD and DIB, but was denied upon reconsideration. (*Id.*) She subsequently requested a hearing before an administrative law judge ("ALJ"). (*Id.*) On May 3, 2012, an ALJ held Plaintiff's hearing. (*Id.*) Plaintiff participated in the hearing, was represented by counsel, and testified. (*Id.*) A

vocational expert ("VE") and a medical expert ("ME") also participated and testified. (*Id.*) On June 27, 2012, the ALJ found Plaintiff not disabled. (Tr. 26.) On August 27, 2013, the Appeals Council declined to review the ALJ's decision, and the ALJ's decision became the Commissioner's final decision. (Tr. 1.)

On March 26, 2014, Plaintiff filed her complaint to challenge the Commissioner's final decision. (Doc. No. 1.) The parties have completed briefing in this matter. (Doc. No. 13, 14.)

Plaintiff asserts the following assignment of error: The ALJ erred in failing to properly evaluate the weight of the evidence.

## II.  EVIDENCE

### A.  Personal and Vocational Evidence

Plaintiff was born in August 1954 and was 54-years-old on the date last insured. (Tr. 35.) She had at least a high school education and was able to communicate in English. (*Id.*) She had past relevant work as an office helper, a housekeeper/cleaner, a flight attendant, and a vocational teacher. (*Id.*)

### B.  Medical Evidence

In order to qualify for an award of disability insurance benefits, a claimant must establish the onset of disability prior to the expiration of her insured status. *See Garner v. Heckler*, 745 F.2d 383, 390 (6th Cir. 1984). Thus, to be entitled to DIB, Plaintiff must establish that she became disabled prior to March 31, 2009, her date last insured. As Plaintiff has alleged a disability onset date of October 31, 2008, the period pertinent to Plaintiff's claim is October 31, 2008, to March 31, 2009 (the "relevant period"). In her Brief on the Merits, Plaintiff sets forth several citations to the record, but very little, if any, of that

2

evidence discusses the relevant time period.  The Court will limit its summary of the evidence to that which Plaintiff has provided from the period at issue.[1]

### 1.     Medical Reports

Plaintiff noted that she treated at Alternative Paths from January 2007 through October 2008.  (Tr. 284-304.)  In April 2008, Plaintiff reported memory issues.  (Tr. 290.)  She was having difficulty registering information and following conversations.  (*Id.*)  In October 2008, Plaintiff reported that she was "[t]hinking of driving truck [sic] over the road as her next career."  (Tr. 286.)  Her mood was described as reasonably stable.  (*Id.*)

Plaintiff discussed some reports submitted by her psychiatrist, Seamus Walsh, D.O.  As of January 5, 2009, Dr. Walsh was prescribing Plaintiff Wellbutrin XL and Ambien for depression and anxiety.  (Tr. 307-310.)  Plaintiff also noted that she treated with James Priester, Ph.D., "throughout the relevant period," but did not discuss any records from Dr. Priester from the relevant period.  Dr. Priester noted in April 2012 that he had seen Plaintiff sporadically for the past three or four years and that he had first seen her in November 2008.  (Tr. 384.)  Plaintiff was diagnosed as bi-polar at that time.  (*Id.*)

### 2.     Agency Reports

On May 4, 2011, State Agency psychological consultant Paul Tangeman, Ph.D., opined that the evidence in Plaintiff's record did not support a finding that she had a severe

---

[1]  The Court will not cull through the record and speculate as to which evidence from the relevant period Plaintiff relies; indeed, the Court is not obligated to wade through and search the entire record for some specific facts that might support a party's claims.  *See Centerior Serv. Co. v. ACME Scrap Iron & Metal*, 104 F. Supp.2d 729, 735 (N.D. Ohio 2000) (Gaughan, J.) (*citing InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989)).

impairment prior to her date last insured of March 31, 2009. (Tr. 105.) On September 16, 2011, State Agency psychological consultant Caroline Lewin, Ph.D., affirmed Dr. Tangeman's opinion. (Tr. 115.)

**C.     Hearing Testimony**

    **1.     Plaintiff's Hearing Testimony**

Plaintiff testified that she completed high school and had two courses in college work. (Tr. 56.) She estimated that she drove three days each week. (Tr. 55.) Plaintiff recounted her work history, which revealed that she held a number of different jobs for short periods of time. (Tr. 56-60.) Plaintiff identified three medical professionals whom she saw on a regular basis: Dr. Walsh, whom she saw once each month; Dr. Priester, a psychologist; and Dr. Bartech, a gynecologist. (Tr. 60-62.) Plaintiff stated that she took several medications, which caused her to be tired, confused, and unable to think clearly. (Tr. 62-63.) She also stated that she had a hard time sleeping about once a week, but usually slept for 12 hours each night. (Tr. 64.) Plaintiff testified that she had periods of depression that lasted from three days to a week. (Tr. 65.) She estimated that she experienced crying spells four to 12 times a month. (Tr. 66.) She stated that she had "a hard time with people probably a third to half the time." (Tr. 67.) She fought with her husband and sometimes with family members and coworkers. (*Id.*) Plaintiff cooked, cleaned, and did laundry most of the time. (Tr. 68.) She went to the grocery store once per week unless she was depressed. (Tr. 69.) She stated that she did not get dressed two to seven times per week due to depression. (*Id.*)

    **2.     Medical Expert's Hearing Testimony**

Dr. Daniel Schweid, a medical expert, testified at Plaintiff's hearing. Dr. Schweid

reviewed Plaintiff's medical history, including a recent consultative exam and subsequent note from Deborah A. Koricke, Ph.D., as well as reports completed by Drs. Walsh and Priester. (Tr. 75-76.) Dr. Schweid noted that Plaintiff had been married seven times and had relationship problems and some arrests for domestic abuse. (Tr. 75.) He reported that Plaintiff had bipolar disorder and a history of migraine headaches. (*Id.*)

Dr. Schweid opined that Plaintiff's conditions did not meet or equal the requirements of any listed impairment. (Tr. 78.) He noted that Dr. Walsh had opined that Plaintiff would miss work at least four days each month, but Dr. Schweid commented that the record did not contain information to support that opinion. (Tr. 79.) He opined that a limitation to low-stress work would eliminate the intense, interpersonal aspects of work for Plaintiff. (*Id.*) He recommended that Plaintiff avoid work that required strict production quotas and involved arbitration, negotiation, confrontation, and supervisory responsibilities. (*Id.*)

### 3. Vocational Expert's Hearing Testimony

Kathleen Rice, a vocational expert, testified at Plaintiff's hearing. The ALJ asked the VE to assume a hypothetical individual of Plaintiff's age, education, and work experience. (Tr. 86.) The individual would have no significant exertional limitations, but she would be limited to routine, low-stress work with no high or strict production quotas; and she would require an environment where she would have no intense interpersonal interaction, such as arbitration, negotiation, supervisory work, confrontational work, or responsibility of the health and safety of others. (Tr. 87.) The VE testified that the hypothetical individual could perform such jobs as an office helper, a housekeeper/cleaner, and a mail clerk. (Tr. 87-88.)

### III.     STANDARD FOR DISABILITY

A claimant is entitled to receive benefits under the Social Security Act when she establishes disability within the meaning of the Act.  20 C.F.R. § 416.905; *Kirk v. Sec'y of Health & Human Servs.,* 667 F.2d 524 (6th Cir. 1981).  A claimant is considered disabled when she cannot perform "substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  20 C.F.R. § 416.905(a).  To receive SSI benefits, a recipient must also meet certain income and resource limitations.  20 C.F.R. §§ 416.1100 and 416.1201.

The Commissioner reaches a determination as to whether a claimant is disabled by way of a five-stage process.  20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4); *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).  First, the claimant must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits.  20 C.F.R. §§ 404.1520(b) and 416.920(b).  Second, the claimant must show that she suffers from a "severe impairment" in order to warrant a finding of disability.  20 C.F.R. §§ 404.1520(c) and 416.920(c).  A "severe impairment" is one that "significantly limits . . . physical or mental ability to do basic work activities."  *Abbot,* 905 F.2d at 923.  Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, the claimant is presumed to be disabled regardless of age, education or work experience.  20 C.F.R. §§ 404.1520(d) and 416.920(d).  Fourth, if the claimant's impairment does not prevent her from doing her past relevant work, the claimant is not disabled.  20 C.F.R. §§ 404.1520(e)-(f) and 416.920(e)-(f).  For the fifth and final step, even if the claimant's

6

impairment does prevent her from doing her past relevant work, if other work exists in the national economy that the claimant can perform, the claimant is not disabled. 20 C.F.R. §§ 404.1520(g), 404.1560(c), *and* 416.920(g).

### IV.    SUMMARY OF COMMISSIONER'S DECISION

The ALJ made the following findings of fact and conclusions of law:

1. The claimant last met the insured requirements of the Social Security Act on March 31, 2009.

2. The claimant did not engage in substantial gainful activity during the period from her alleged onset date of October 31, 2008, through her date last insured of March 31, 2009.

3. Through the date last insured, the claimant had the following severe impairments: Bipolar disorder, anxiety, depression, borderline personality disorder, and headaches.

4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5. After careful consideration of the entire record, the undersigned finds that through the date last insured, the claimant had the residual functional capacity to perform a full-range of work at all exertional levels but with the following nonexertional limitations: The claimant can perform routine, low stress work with no high or strict production quotas. The claimant would require an environment where there is no intense interpersonal interaction such as arbitration, negotiation, supervision, or confrontational work or responsibility for the health and safety of others.

6. Through the date last insured, the claimant was capable of performing past relevant work as an office helper and housekeeper/cleaner. This work did not require the performance of work-related activities precluded by the claimant's residual functional capacity.

7. The claimant was not under a disability, as defined in the Social Security Act, at any time from October 31, 2008, the alleged onset date, through March 31, 2009, the date last insured.

(Tr. 31-36.)

**LAW & ANALYSIS**

### A.     Standard of Review

Judicial review of the Commissioner's decision is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards. *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010). Review must be based on the record as a whole. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The court may look into any evidence in the record to determine if the ALJ's decision is supported by substantial evidence, regardless of whether it has actually been cited by the ALJ. *Id.* However, the court does not review the evidence *de novo*, make credibility determinations, or weigh the evidence. *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

The Commissioner's conclusions must be affirmed absent a determination that the ALJ failed to apply the correct legal standards or made findings of fact unsupported by substantial evidence in the record. *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009). Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Brainard*, 889 F.2d at 681. A decision supported by substantial evidence will not be overturned even though substantial evidence supports the opposite conclusion. *Ealy*, 594 F.3d at 512.

### B.     Plaintiff's Assignment of Error

#### 1.     The ALJ Erred in Failing to Properly Evaluate the Weight of the Evidence.

Plaintiff argues that in finding Plaintiff not disabled, the ALJ failed to properly

8

evaluate the weight of the evidence. Specifically, Plaintiff maintains that the ALJ erred in assessing the following evidence: (1) A mental residual functional capacity (RFC) opinion from Dr. Priester rendered on August 26, 2011 (tr. 346-347) and another opinion from April 15, 2012 (tr. 384-386); (2) an RFC opinion from Dr. Walsh dated January 16, 2012 (tr. 371-376); and (3) an opinion from consultative examiner Dr. Koricke rendered on March 23, 2011 (tr. 330-336). According to Plaintiff, the ALJ

> completely failed to address said evidence in his decision and perform the requisite procedure of weighing said evidence with the rest of the testamentary and other opinion evidence. In fact, review of the ALJ's decision reveals not one mention of the opinions of either treating sources - Dr. Priester or Dr. Walsh. Nor does the ALJ address or mention the findings of consultative evaluator, Dr. Koricke. The ALJ also neglects to address the evidence of Plaintiff's treatment at Alternative Paths. There is not one word, sentence, or paragraph acknowledging any of this information. As such, the ALJ fails to abide by the requirements of both 20 CFR 404.1527 or SSR 96-2p in providing "sufficiently specific" reasons for the weight given to this evidence.

(Plaintiff's Brief ("Pl.'s Br.") at PageID #445.) For the following reasons, Plaintiff's argument lacks merit.

Plaintiff is correct in stating that the Code of Federal Regulations and the Social Security Regulations provide clear guidance as to how opinions and evidence provided by treating sources and consultative examiners are to be evaluated.[2] As the Commissioner

---

[2] "An ALJ must give the opinion of a treating source controlling weight if he finds the opinion 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and 'not inconsistent with the other substantial evidence in the case record.'" *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) (quoting 20 C.F.R. § 404.1527(d)(2)) (internal quotes omitted). If an ALJ decides to give a treating source's opinion less than controlling weight, he must give "good reasons" for doing so that are sufficiently specific to make clear to any subsequent reviewers the weight given to the treating physician's opinion and the reasons for that weight. *See Wilson*, 378 F.3d at 544 (quoting S.S.R. 96-2p, 1996 WL 374188, at *5 (S.S.A.)).

notes in her Brief, however, the opinions from Drs. Priester, Walsh, and Koricke that Plaintiff claims that the ALJ improperly evaluated or failed to discuss altogether are not from the relevant period of October 31, 2008–Plaintiff's alleged onset date–to March 31, 2009–Plaintiff's date last insured. As discussed previously, to qualify for an award of disability insurance benefits, a claimant must establish the onset of disability prior to the expiration of her insured status. *See Garner v. Heckler*, 745 F.2d 383, 390 (6th Cir. 1984). The ALJ specifically addressed this issue at the outset of his hearing decision. He wrote:

> It must be noted that because the Title XVI claim was not appealed, the evidence and exhibits in regards to the Title XVI claim are not discussed or cited in this decision.
>
> It must also be noted that although the claimant alleges her disability began on October 31, 2008, her date last insured is March 31, 2009, which is relevant for purposes of benefit eligibility under Title II of the Social Security Act. Therefore, the undersigned has concentrated on the evidence in the record, such as treatment records and opinions, that is both in regard to the Title II claim and that which is relevant to the claimant's date last insured, which is March 31, 2009.

(Tr. 29.) Plaintiff's concerns about the ALJ's analysis of treatment notes and opinions may

---

Furthermore, it is well established that an ALJ is not required to discuss each and every piece of evidence in the record for his decision to stand. *See, e.g., Thacker v. Comm'r of Soc. Sec.*, 99 F. App'x 661, 665 (6th Cir. 2004). However, where the opinion of a medical source contradicts his RFC finding, an ALJ must explain why he did not include its limitations in his determination of a claimant's RFC. *See, e.g., Fleischer v. Astrue*, 774 F. Supp. 2d 875, 881 (N.D. Ohio 2011) (Lioi, J.) ("In rendering his RFC decision, the ALJ must give some indication of the evidence upon which he is relying, and he may not ignore evidence that does not support his decision, especially when that evidence, if accepted, would change his analysis."). Social Security Ruling 96-8p provides, "[t]he RFC assessment must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." SSR 96-8p, 1996 WL 374184, *7 (July 2, 1996).

10

have been legitimate if they concerned evidence from the relevant period. In arguing that the ALJ failed to properly evaluate the weight of the evidence, however, the Plaintiff has not attempted to explain why the ALJ was required to consider evidence from after her date last insured. Accordingly, Plaintiff's challenge to the ALJ's treatment of evidence from outside the relevant period does not present a basis for remand of her case, as the ALJ was not required to consider such records in determining whether Plaintiff was disabled from October 31, 2008, to March 31, 2009.

Moreover, substantial evidence supports the ALJ's conclusion that Plaintiff was not under a disability from any time from October 31, 2008, through March 31, 2009. In making this determination, the ALJ relied on, *inter alia:* (1) The hearing testimony of Dr. Schweid, who reviewed all of the medical evidence in Plaintiff's file up to the hearing date of May 3, 2012, which included records from outside the relevant period; and (2) the opinions of state agency psychological consultants Drs. Tangeman and Lewin,[3] who also reviewed medical evidence in Plaintiff's record from outside the relevant period. (Tr. 34-35.) As Plaintiff has failed to show that the ALJ erred in not considering evidence from outside the relevant period, and the ALJ's decision is supported by substantial evidence, Plaintiff's assignment of error does not present a basis for remand of her case.

## VI. CONCLUSION

For the foregoing reasons, the Magistrate Judge recommends that the Commissioner's final decision be AFFIRMED.

---

[3] The ALJ gave "some weight" to the opinions of Drs. Tangeman and Lewin. (Tr. 35.) He agreed with their opinions that Plaintiff was not disabled prior to her date last insured. (*Id.*) Unlike the physicians, however, the ALJ found that Plaintiff had severe impairments prior to her date last insured. (*Id.*)

                                                                    s/ *Nancy A. Vecchiarelli*
                                                                    U.S. Magistrate Judge

Date: January 12, 2015

## **OBJECTIONS**

      **Any objections to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation.  28 U.S.C. § 636(b)(1). Failure to file objections within the specified time may waive the right to appeal the District Court's order.  See** *United States v. Walters*, **638 F.2d 947 (6th Cir. 1981)**; *Thomas v. Arn*, **474 U.S. 140 (1985),** *reh'g denied*, **474 U.S. 1111 (1986).**